UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ALLSTATE LIFE INSURANCE COMPANY

                Plaintiff,

v.                                          Civil Action No: 2:14cv372

CHRISTOPHER ELLETT,

and

RYAN LEE MARTINEZ,

                Defendants.

## OPINION AND ORDER

       This matter is before the Court on a motion for summary judgment filed by defendant Ryan Lee Martinez ("Martinez").  The instant case is an "interpleader" action in which plaintiff, Allstate Life Insurance Company ("Allstate"), as issuer of a life insurance policy for decedent Cindy Jensen-Ellett ("the Insured"), seeks to deposit death benefit funds with the Court to allow defendants to litigate their competing claims to such funds.  As discussed below, because Martinez fails to demonstrate that summary judgment should be entered in his favor at this time, the pending motion is **DENIED**.

### I. Factual and Procedural History

       On or about July 25, 2013, the Insured died in her home from a knife wound to the neck, and her death certificate lists the cause of death as "homicide."  Compl. ¶¶ 11-12, ECF No. 1.  The Insured's

husband died on the same day from a gunshot wound to the head, with his cause of death likewise identified as "homicide." Id. ¶ 13. At the time of her death, the Insured had a life insurance policy issued by Allstate in the amount of $202,882.20 (the "Death Benefits"). Id. at ¶¶ 10, 19; ECF No. 7, at 2.

The Insured's life insurance policy identifies two beneficiaries: defendant Christopher Ellett ("Ellett") (50%); and defendant Martinez (50%). Compl. ¶ 10. After the Insured's death, both Ellett and Martinez filed claims with Allstate asserting the right to policy proceeds. Id. ¶¶ 14-15. Ellett has already received his 50% share in the amount of $101,441.10, but as executor of the Insured's estate, Ellett seeks to prevent Martinez from obtaining the other 50% based on Martinez's alleged involvement in the death of the Insured. Id. ¶¶ 18-19. Allstate, having concerns about Martinez's apparent involvement in the Insured's death, filed this interpleader action after learning from the City of Chesapeake Police Department that Martinez was a suspect. Id. ¶¶ 16-17.

Allstate's complaint seeks permission to deposit the disputed portion of the Death Benefits into the registry of the Court in order to permit Martinez and Ellett to litigate their competing claims, and further seeks dismissal from this suit with an award of attorneys' fees and costs. ECF No. 1. Although Allstate has not yet filed a motion seeking to deposit the disputed portion of the Death Benefits

with the Court, and discovery has not yet commenced in this case,[1] Martinez filed the instant summary judgment motion arguing that he is legally entitled to 50% of the Death Benefits. Both Ellett and Allstate subsequently filed briefs in opposition to summary judgment, and Martinez later filed a reply brief. The pending summary judgment motion is therefore ripe for review.

## II. Standard of Review

"Interpleader is a procedural device that allows a disinterested stakeholder to bring a single action joining two or more adverse claimants to a single fund." Security Ins. Co. of Hartford v. Arcade Textiles, Inc., 40 F. App'x 767, 769 (4th Cir. 2002). It is designed "to protect the stakeholder from multiple, inconsistent judgments and to relieve it of the obligation of determining which claimant is entitled to the fund." Id.

An interpleader action typically involves two stages. In re Paysage Bords De Seine, 1879 Unsigned Oil Painting on Linen by Pierre-Auguste Renoir, 991 F. Supp. 2d 740, 743 (E.D. Va. 2014) (citing United States v. High Tech. Prods., Inc., 497 F.3d 637, 641 (6th Cir. 2007)). First, the court must determine whether the plaintiff "has properly invoked interpleader, including whether the

---

[1] Ellett has filed an answer to Allstate's complaint in interpleader, stating that he did not oppose this interpleader action, but does seek a stay of proceedings "until such time as the criminal liability of Ryan Martinez for the death of the Insured is established, and until [Ellett] . . . has the opportunity to investigate a potential action under the Virginia Wrongful Death Statute." Ellett Answer ¶ 30, ECF No. 8. Martinez has not filed an answer.

3

court has jurisdiction over the suit, whether the stakeholder is actually threatened with double or multiple liability, and whether any equitable concerns prevent the use of interpleader."[2]  High Tech. Prods., Inc., 497 F.3d at 641.  Once a court determines that interpleader is appropriate, the court "may discharge the plaintiff from further liability," and may enter an injunction restraining the claimants from litigating related actions in state or federal court. 28 U.S.C. § 2361; High Tech. Prods., 497 F.3d at 641; see City Nat. Bank of Fairmont v. Fidelity Mut. Life Ins. Co., 206 F.2d 531, 534 (4th Cir. 1953) (dismissing the interpleader plaintiff from suit after the "cash value" of the insurance policy was deposited with the court).  In the second stage, "a scheduling order is issued and the case continues between the claimants to determine their respective rights."  Metro. Life Ins. Co. v. Vines, No. WDQ-10-2809, 2011 WL 2133340, at *2 (D. Md. May 25, 2011); see High Tech. Prods., 497 F.3d at 641 (indicating that the second stage proceeds "via normal litigation processes, including pleading, discovery, motions, and trial").

Federal procedure provides two distinct methods of invoking interpleader—"statutory" interpleader and "rule" interpleader—and

---

[2] Equitable concerns include whether the plaintiff has acted in bad faith or delayed unreasonably in bringing the interpleader action.  See Mendez v. Teachers Ins. & Annuity Ass'n & Coll. Ret. Equities Fund, 982 F.2d 783, 787 (2d Cir. 1992) (bad faith); Matter of Bohart, 743 F.2d 313, 325 (5th Cir. 1984) (unreasonable delay).

their jurisdictional requirements vary. Under statutory interpleader, district courts have original jurisdiction over actions if: (1) the amount in dispute exceeds $500; (2) there are two or more adverse claimants of diverse citizenship; and (3) the plaintiff deposits the money or property in dispute into the registry of the court or posts an adequate bond. 28 U.S.C. § 1335. Section 1335 has been "uniformly construed to require only 'minimal diversity,' that is, diversity of citizenship between two or more claimants, without regard to the circumstance that other rival claimants may be co-citizens." State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 530 (1967). By contrast, rule interpleader pursuant to Federal Rule of Civil Procedure 22 is a procedural device only, and jurisdiction must therefore be proper under 28 U.S.C. § 1331 (federal question jurisdiction) or § 1332 (diversity jurisdiction).

Because Martinez has filed a summary judgment motion appearing to argue that the record demonstrates that interpleader is not appropriate, or that even if it is appropriate, Martinez should prevail on the merits through summary disposition, the Court must apply the familiar summary judgment standard. Such standard provides, in short, that "summary judgment should be granted if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law,' based on the 'materials

5

in the record,'" which must be viewed "in the light most favorable to the nonmoving party." Sansotta v. Town of Nags Head, 724 F.3d 533, 539 (4th Cir. 2013) (quoting Fed. R. Civ. P. 56). On summary judgment, "[t]he movant initially bears the burden of showing the absence of any genuine issue of material fact," and it is only when such burden is effectively carried that the nonmovant is required "to present facts sufficient to create a triable issue." Wilson Works, Inc. v. Great American Ins. Group, 495 F. App'x 378, 380 (4th Cir. 2012) (citing Temkin v. Frederick Cnty. Comm'rs., 945 F.2d 716, 718 (4th Cir. 1991)).

### III. Discussion

Prior to filing an answer or other responsive pleading, Martinez filed the instant summary judgment motion requesting a final ruling on the merits finding that Martinez is entitled to the portion of the Death Benefits for which he is a designated beneficiary. Although Martinez's summary judgment motion does not expressly allege that this Court lacks jurisdiction over this case, it appears to argue that interpleader is not appropriate because there are not two legitimate adverse claimants.

### A. Interpleader Stage One

Applying the interpleader standard set forth above, it appears from the current record that Allstate has met all of the requirements for invoking interpleader, except for the deposit requirement, which

can be cured by a subsequent motion to deposit.[3]  First, the amount in controversy is $101,441.10, which exceeds both the $500 jurisdictional requirement for statutory interpleader and the $75,000 diversity jurisdiction threshold that applies to rule interpleader.  Second, diversity is satisfied under both the relaxed statutory interpleader "minimal diversity" requirement and the traditional "complete diversity" requirement of § 1332 that applies to rule interpleader.[4]

Third, it appears that Allstate legitimately fears the risk of multiple lawsuits from competing claimants as both Martinez, and Ellett (acting as executor), claim entitlement to over $100,000 in Death Benefits still in Allstate's possession.  Specifically, Ellett contends that Martinez is barred from collecting his portion of the Death Benefits because of Virginia's "slayer statute" and/or Virginia common law.  ECF No. 9, at 3-6.  Notwithstanding Martinez's limited evidence advanced in support of his assertion that he was

---

[3] Although there does not appear to be any required procedure for conducting the first stage of an interpleader action, the "issues typically are formulated by motion."  7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1714 (3d ed. 2001).  In a similar interpleader action currently pending before this Court involving both Ellett and Martinez, the plaintiff insurance company filed both a "Motion to Deposit Funds" and a "Motion for Discharge."  Unum v. Ellett, Civil Action No. 2:14cv218.  On the same date the instant Order is entered, this Court entered an Order granting both of the insurance company's motions in 2:14cv218.

[4] According to Allstate's complaint, it appears that there is complete diversity as Ellett is a citizen of Florida, Martinez is a citizen of Virginia, and Allstate is a citizen of Illinois.  Compl. ¶¶ 1-5.

not involved in the murder of the Insured, the circumstantial evidence associated with the Insured's death, as well as the absence of evidence detailing events preceding her stabbing, is sufficient to demonstrate that Allstate is in a position where it legitimately fears not just _potential_ conflicting claims, but _actual_, and colorable, conflicting claims. See Overstreet v. Kentucky Cent. Life Ins. Co., 950 F.2d 931, 940 (4th Cir. 1991) ("An insurer faced with _potential_ conflicting claims by a possible slayer and the insured's estate may absolve itself of excess liability by paying the proceeds into the registry of the court and filing an action in interpleader to determine the proper recipient.") (emphasis added); 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1704 (3d ed. 2001) ("The primary test for determining the propriety of interpleading the adverse claimants and discharging the stakeholder (the so-called 'first stage' of interpleader) is whether the stakeholder legitimately fears multiple vexation directed against a single fund.") (emphasis added).

To the extent that Martinez argues that this Court should, at this preliminary stage, analyze the merits of the two competing claims in order to conclusively determine if they are both "valid" competing claims, such assertion is rejected by this Court. See 7 Wright, supra, § 1704 (explaining that competing claims must only "meet a minimal threshold level of substantiality" and that because

the propriety of interpleader turns on "the possibility of multiplicity [of adverse claims], a determination of the respective merits of the adverse claims is inappropriate at the initial stage" of an interpleader action) (emphasis added); 28 U.S.C. § 1335 (indicating that statutory interpleader requires that "[t]wo or more adverse claimants . . . are claiming or may claim to be entitled to such money or property") (emphasis added). Having received a claim from Martinez, as well as a claim from Ellett (as executor of the Insured's estate) in the form of a letter from Ellett's lawyers citing the Virginia slayer statute and requesting that Martinez's share of the insurance proceeds be "delayed pending his prosecution," ECF No. 1-7, and having performed some additional investigation into the pending criminal case, Allstate appropriately attempted to absolve itself of the risk of paying the wrong party by filing the instant interpleader action. Overstreet, 950 F.2d at 940. Although this Court can envision a hypothetical case where the record plainly demonstrates that one of the purportedly competing claims is so clearly unsupported in fact or law that the interpleader action should fail at stage one, the record in this case does not warrant such outcome. Rather, both Ellet and Martinez have advanced a colorable claim to the disputed funds, and both claims find some support in the (currently undeveloped) record.

9

Moreover, there does not appear to be any equitable concerns weighing against Allstate, as it appears that Allstate is a disinterested stakeholder that does not dispute the amount owed under the relevant insurance policy, and is timely asserting, in good faith, that it is unable to determine which claimant is legally entitled to such funds.  It therefore appears that interpleader is appropriate on this record as there is a legitimate dispute by competing claimants, with diverse citizenship, with respect to more than $100,000 in life insurance proceeds.  Martinez's summary judgment motion is therefore denied to the extent it seeks to challenge the threshold "stage one" determination as to whether interpleader is appropriate.

## B. Interpleader Stage Two

To the extent that Martinez argues that even if the Court proceeds to stage two of the interpleader inquiry, summary judgment should be entered in his favor, such claim is denied <u>at this time</u>. Martinez argues that summary judgment is appropriate on the record before the Court because he has not been formally charged with the death of the Insured, and because, according to Martinez, "he was not involved in the death of the insured."  ECF No. 7, at 6.  In opposition to Martinez's summary judgment motion, Ellett and Allstate both argue that summary judgment is improper because there

are genuine disputes as to material facts regarding the circumstances surrounding the death of the Insured.

As noted above, the second stage of an interpleader action is similar to a typical civil case in that the respective rights of the claimants are resolved through the adversarial process. Accordingly, here, as in other civil cases, the filing of a summary judgment motion in advance of any discovery appears premature. See McCray v. Md. Dep't of Transp., Md. Transit Auth., 741 F.3d 480, 483 (4th Cir. 2014) (indicating that "[i]n general, summary judgment should only be granted 'after adequate time for discovery'" as filing such a motion before discovery "forces the non-moving party into a fencing match without a sword or mask" (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986))); see also 7 Wright, supra, § 1704 (explaining that "[e]xtended inquiry at a preliminary stage into the stakeholder's motives usually will prove fruitless and the court should not allow itself to be detoured into a premature speculation about the merits") (emphasis added). However, notwithstanding the premature nature of such motion, the non-movants have not filed a Rule 56(d) affidavit seeking additional time for discovery, and the Court therefore proceeds to address whether summary judgment is warranted on the limited record.

Although non-movants do acknowledge that Martinez's girlfriend was the only person charged with the murder of the Insured, their

briefs highlight the expansive reach of the Virginia "slayer statute." Such statute bars a "slayer" from acquiring any property as a result of the death of the decedent, defining "slayer" to include "any person (i) who is convicted of the murder or voluntary manslaughter of the decedent or, (ii) <u>in the absence of such conviction, who is determined</u>, whether before or after his death, by a court of appropriate jurisdiction <u>by a preponderance of the evidence</u> to have committed one of the offenses listed in clause (i) resulting in the death of the decedent." Va. Code § 64.2-2500 (2012) (emphasis added). Although Martinez has not been criminally charged with the death of the Insured, such fact does not resolve whether the second prong of the slayer statute is applicable, nor does it resolve whether Virginia common law, as discussed below, would preclude Martinez from receiving life insurance proceeds. <u>See Hartford Life and Acc. Ins. Co. v. King</u>, No. 7:11cv411, 2012 WL 5472036, at *1, *8 (W.D. Va. 2012) (denying the alleged slayer's summary judgment motion as premature, and recognizing that even in the absence of criminal charges, the slayer statute could bar claimant from recovering life insurance proceeds).

Although the current record is largely undeveloped,[5] it appears undisputed that Martinez was not only present when the Insured was

---

[5] Curiously, neither Allstate nor Ellett provided any affidavits or other evidence to counter the evidence that was advanced by Martinez in support of his summary judgment motion. However, <u>at this early stage in the</u>

killed, but that Martinez's girlfriend killed the Insured with a knife <u>during the course of an argument between Martinez and the Insured</u>, and that subsequent to the Insured's death, Martinez unlawfully transported both the Insured's body and the body of her husband, who was apparently shot in the head by Martinez on the same day, and in the same house, in which the Insured was killed.  Nothing in the current record sheds light on either Martinez's actions immediately preceding the killing of the Insured, or how (or when) the shooting of the Insured's husband occurred.

It is well-established under Virginia law that "[e]very person who is present at the commission of a trespass, encouraging or inciting the same by words, gestures, looks or signs, or who in any way, or by any means, countenances or approves the same, is, in law, assumed to be an aider and abettor, and is liable as [a] principal." <u>Spradlin v. Commonwealth</u>, 195 Va. 523, 526 (1954) (internal quotation marks and citations omitted).  Stated differently, while "mere presence" when a crime is committed is insufficient "to render one guilty as an aider or abettor," when a statute criminalizes an act, "it imposes on all persons who are present purposely giving aid and comfort to the actual wrongdoer criminal responsibility equal to that of the wrongdoer."  <u>Id.</u> at 527 (internal quotation marks and

_____

<u>proceedings</u>, and taking the evidence before the Court in a light most favorable to the nonmovants, the Court finds that the best course is to deny the summary judgment motion without prejudice to Martinez's right to refile such a motion after additional facts are developed in this matter.

citations omitted). Moreover, "whether a person does in fact aid or abet another in the commission of a crime is a question which <u>may be determined by circumstances</u> as well as by direct evidence." <u>Id.</u> (internal quotation marks and citations omitted) (emphasis added). Consequently, particularly at this pre-discovery stage, there remains a genuine issue of material fact as to whether Martinez is barred from recovering his portion of the Death Benefits as an "aider or abettor."[6]

Even if Martinez is not a "slayer" as defined by the Virginia slayer statute, he may still be barred from recovering life insurance proceeds based on the "ancient common law doctrine that no man shall be allowed to profit by his own wrong." <u>Life Ins. Co. of Va. v. Cashatt</u>, 206 F. Supp. 410, 411 (E.D. Va. 1962). Notably, a provision in the Virginia Code separate from the slayer statute embodies this doctrine, expressly stating that the slayer statute "shall be construed broadly in order to effect the policy of the Commonwealth

---

[6] It appears from public court records from the Chesapeake Circuit Court that, subsequent to the briefing in this case, both Martinez and his girlfriend, Airika Liljegren, have entered into "Alford pleas" as to the state court murder charges, with Liljegren pleading to the Insured's murder, and Martinez pleading to the husband's murder. Case Nos. CR14000113 (Martinez) and CR14000111 (Liljegren), <u>available at</u> http://ewsocis1.courts.state.va.us/CJISWeb/circuit.jsp. Moreover, Martinez appears to have entered an Alford plea as to a firearm charge and two charges for the post-killing unlawful transportation of the Insured's body and her husband's body. <u>Id.</u> As explained above, the limited record, viewed in the non-movants' favor, is insufficient to demonstrate that Martinez did not participate, encourage, or approve of his girlfriend's deadly attack on the Insured, which occurred during an argument between Martinez and the Insured.

that no person shall be allowed to profit by his own wrong" and that codification of the slayer statute does not override common law rights and remedies that prevent a person from profiting from an unlawful killing.  Va. Code § 64.2-2511 (2012).

Based on the forgoing, to include the pre-discovery lack of clarity in the record as to the details of the Insured's killing, Martinez fails to demonstrate the absence of disputed material facts, and his summary judgment motion is therefore denied on this ground.

### C. Request for an Evidentiary Hearing

Martinez's summary judgment briefing alternatively requests an evidentiary hearing to determine whether Allstate performed an adequate investigation into the facts surrounding the Insured's death.  For the reasons stated in Ellett's brief in opposition to summary judgment, ECF No. 9, at 5-6, the Court denies such request. See 7 Wright, supra, § 1704 (indicating that "extended inquiry at a preliminary stage into the stakeholder's motives usually will prove fruitless").

### IV. Conclusion

For the reasons discussed above, Martinez's motion for summary judgment is **DENIED** **without prejudice** to his right to refile such motion at the appropriate time.  The Court awaits further motion from Allstate as to the deposit of funds in the Court's registry

and/or the filing of any other appropriate motion by any party to this case.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED**.

/s/

Mark S. Davis
United States District Judge

_____
United States District Judge

Norfolk, Virginia
February 4 , 2015

16